UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

GULF COAST BANK AND TRUST
COMPANY

CIVIL ACTION

VERSUS

NO. 16-412-JJB-RLB

DESIGNED CONVEYOR SYSTEMS, LLC

## RULING

This matter is before the Court on a Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6), Or, Alternatively, To Transfer (Doc. 4) brought by the Defendant, Designed Conveyor Systems, LLC ("DCS"). The Plaintiff, Gulf Coast Bank And Trust Co. ("Gulf Coast"), filed an Opposition (Doc. 9) and the Defendant filed a Reply (Doc. 16). Oral argument is unnecessary. The Court's jurisdiction exists pursuant to 28 U.S.C. § 1332. For the reasons stated herein, the Defendant's Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6), Or, Alternatively, To Transfer (Doc. 4) is **GRANTED and the case is dismissed without prejudice**.[1]

## I.   BACKGROUND[2]

Defendant DCS is an Indiana limited liability company with its principal place of business in Franklin, Tennessee.[3] *Affidavit of Kenneth Wood* ¶ 4(a), Doc. 4-2. Plaintiff Gulf Coast is a

---

[1] Because this Court is dismissing the case for lack of personal jurisdiction over the nonresident Defendant, it need not address arguments relating to 12(b)(3), 12(b)(6), or 28 U.S.C. § 1404(a).

[2] When a court considers a challenge to personal jurisdiction, "[t]he allegations of the complaint, except insofar as controverted by opposing affidavits, must be taken as true, and all conflicts in the facts must be resolved in favor of the plaintiffs for purposes of determining whether a *prima facie* case for personal jurisdiction has been established." *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985). A court can resolve the jurisdictional issue by looking to any recognized method of discovery such as affidavits and depositions. *Id.*  The facts outlined above have been taken from the following documents—(1) the *Gulf Coast II Petition and Attached Exhibits*, Doc. 9-1, (2) *Affidavit of Kenneth Wood, President of DCS*, Doc 4-2, and (3) *Affidavit of Wade Hladky, President of Gulf Coast Credit,* Doc. 9-2.

[3] DCS' only connection to Louisiana in the *instant matter* is that Gulf Coast sent e-mails and Acknowledgments to DCS from its location in Louisiana. DCS has some other contacts with Louisiana, but those contacts, from 2013, are unrelated to this dispute. In 2013, DCS registered to do business in the State of Louisiana in order to perform work on

Louisiana State bank domiciled in the Parish of Orleans, licensed to do business in the State of Louisiana, with its principal place of business in Louisiana. *Gulf Coast II Petition* ¶ 1, Doc. 9-1. Although a non-party, another important entity in this dispute is Vinex Global, LLC ("Vinex"). Vinex is a subcontractor that was hired by DCS to complete a project in Denver, Colorado. *Affidavit of Kenneth Wood* ¶ 8, Doc. 4-2.

While Vinex had a direct relationship with Gulf Coast, DCS' only relationship with Gulf Coast was through Vinex. In order to receive advances from Gulf Coast Bank, Vinex entered into a Receivables Purchase Agreement ("RPA") with Gulf Coast. *Gulf Coast II Petition* ¶¶ 22-24, Doc. 9-1. Under the terms of the RPA, Vinex was entitled to sell certain of its accounts receivables to Gulf Coast, and upon buying the receivables, Gulf Coast arguably obtained ownership of those receivables. *Id.*

On four separate occasions in late 2015, Vinex needed financial accommodations from Gulf Coast. *See Affidavit of Wade Hladky*, Doc. 9-2. On each occasion, Vinex offered to sell and assign invoices to Gulf Coast that DCS owed to Vinex. *Id.* Before purchasing the four invoices, Gulf Coast, via e-mails, sent Invoice Acknowledgment Agreements ("Acknowledgments") to DCS requesting that DCS acknowledge the obligation to pay each invoice. *Id.* ¶¶ 3, 8, 13, 18.

All of the Acknowledgments were substantially the same. *See Gulf Coast II Petition Exhibits A, E, F, G*, Doc. 9-1. They were addressed generally to Designed Conveyor Systems, LLC at its address in Franklin, Tennessee and requested that DCS acknowledge that certain invoices were "currently due in the amount indicated." *Id.* Additionally, they said that payment of the invoices could be made to Gulf Coast via mail at an address in Dallas, Texas or via wire to a bank

---

a single project in Baton Rouge. *Affidavit of Kenneth Wood* ¶ 5, Doc. 4-2. The project was negotiated and contracted in Pittsburgh, Pennsylvania and Nashville, Tennessee. *Id.* ¶ 6. DCS finished that project in the fall of 2013 and has not performed or solicited any work in Louisiana since its completion. *Id.* ¶¶ 6, 7.

account in New Orleans, Louisiana. *Id.* Corey Fager, on behalf of DCS, signed each Acknowledgment at DCS' office in Franklin, Tennessee. *Id.*; *Affidavit of Kenneth Wood* ¶ 20, Doc. 4-2. Based on DCS' representations, Gulf Coast agreed to purchase the four invoices and thereafter extended financial accommodations to Vinex. *Affidavit of Wade Hladky*, ¶¶ 5, 10, 15, 20, Doc. 9-2.

The first three Acknowledgments are not at issue in this case because DCS paid them. *Id.* ¶¶ 7, 12, 17. This dispute arises out of the fourth Acknowledgment. DCS has not paid this invoice because Vinex allegedly breached its subcontract with DCS in October 2015 by abandoning the Denver project without advance notice. *Affidavit of Kenneth Wood* ¶ 9, Doc. 4-2. Due to this improper abandonment, DCS terminated the subcontract with Vinex on or around October 20, 2015, and subsequently filed suit against Vinex in Tennessee.[4]

Gulf Coast sued DCS on April 6, 2016 in Orleans Parish on various State law claims ("Gulf Coast I"). DCS removed Gulf Coast I to the United States District Court for the Eastern District of Louisiana.[5] On June 2, 2016, Gulf Coast voluntarily dismissed its Petition. That same day, Gulf Coast refiled its Petition in East Baton Rouge Parish ("Gulf Coast II"). DCS removed the case here and filed the instant Motion seeking dismissal.

## II.   PERSONAL JURISDICTION

When a nonresident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). When a court rules on a motion to dismiss for

---

[4] On November 12, 2015, DCS sued Vinex in Tennessee seeking a declaratory judgment as to Vinex's material breach of the subcontract. DCS argues that it does not owe Gulf Coast money on the last Acknowledgment because under the terms of the subcontract, Vinex and any of its assignees, including Gulf Coast, is not entitled to payment. *Affidavit of Kenneth Wood* ¶ 12, Doc. 4-2.
[5] Defendant filed a Motion to Dismiss in that action that is substantially similar to the present Motion. *Def's. Supp. Mem.* 5, Doc. 4-1.

lack of personal jurisdiction without holding an evidentiary hearing, the plaintiff needs to make a *prima facie* showing of personal jurisdiction. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). In deciding upon a motion to dismiss for lack of personal jurisdiction, a court must accept the plaintiff's allegations as true, other than those which are controverted by the defendant or are simply conclusory statements, and conflicts between the parties' facts are resolved in the plaintiff's favor. *Panda Brandywine v. Potomac*, 253 F.3d 865, 868 (5th Cir. 2001).

In a diversity action, a federal court may exercise personal jurisdiction over a nonresident defendant (1) as allowed under the State's long-arm statute; and (2) to the extent permitted by the due process clause of the fourteenth amendment. *Johnston,* 523 F.3d at 609. Because the Louisiana long-arm statute and the limits of constitutional due process are coextensive, the two-step inquiry collapses into one constitutional inquiry. *Southern Filter Media, LLC v. Halter*, Civil Action No. 13-116-JJB, 2013 WL 3423269, at *2 (M.D. La. Jul. 8, 2013).

The fourteenth amendment due process clause "requires satisfaction of a two-prong test in order for a federal court to properly exercise jurisdiction: (1) the nonresident must have minimum contacts with the forum State, and (2) subjecting the nonresident to jurisdiction must be consistent with traditional notions of fair play and substantial justice." *Freudensprung v. Offshore Tech. Servs., Inc.,* 379 F.3d 327, 343 (5th Cir. 2004) (citations omitted). A court must analyze the defendant's contacts with the forum State to determine whether they are continuous and systematic, thereby giving rise to general personal jurisdiction, or whether the cause of action arises out of the defendant's contacts with the forum State, thereby giving rise to specific personal jurisdiction. *Jones v. Petty-Ray Geophysical, Geosource, Inc.,* 954 F.2d 1061, 1068 (5th Cir. 1992).

4

###### A.        General Jurisdiction

A court may assert general jurisdiction over foreign (i.e. sister-state or foreign-country) companies to hear *any and all claims* against them when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State. *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014) (emphasis added). "It is therefore, incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business." *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014). The fact that an entity is registered to do business in a forum State and maintains an agent for service of process in a forum State is insufficient to establish general jurisdiction. *Wenche Siemer v. The Learjet Acquisition Corp.,* 966 F.2d 179, 183 (5th Cir. 1992); *DNH, L.L.C v. In-N-Out Burgers*, 381 F.Supp.2d 559, 565 (E.D. La. 2005).

Plaintiff argues that this court has general personal jurisdiction over DCS for five reasons— (1) DCS executed and sent four separate Acknowledgments to a Louisiana Bank; (2) DCS transmitted funds to Gulf Coast in Louisiana via wire transfer; (3) DCS was aware that Gulf Coast was located in Louisiana; (4) DCS has a license to perform work in Louisiana; (5) DCS has performed work in the State; and (6) DCS has a registered agent for service of process in Louisiana. *Pl.'s Opp'n* 8, Doc. 9. The Court finds otherwise.

This Court lacks general personal jurisdiction over DCS because DCS does not have sufficient contacts with Louisiana to render it essentially at home in Louisiana. DCS is an Indiana limited liability company with its principal place of business in Tennessee. *Affidavit of Kenneth Wood* ¶ 4, Doc. 4-2. Although registered to do business in Louisiana, DCS does not have an office in the State, nor does it rent property in the State. *Id.* It does not have facilities, records, or employees in the State. *Id.* Additionally*,* DCS does not have any ongoing projects in the State; in

5

fact, the last project it performed in Louisiana was in 2013. *Id.* Accordingly, this Court finds that DCS' minimal contacts with Louisiana do not give rise to general jurisdiction.

### B.     Specific Jurisdiction

Specific jurisdiction focuses on the relationship among the defendant, the forum and the litigation. *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). To establish specific jurisdiction, a defendant must have purposefully directed his activities at a forum, and the litigation must result from injuries that arise out of those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). Due process requires that a defendant be haled into court in a forum State *on his own affiliation* with the State, not based on the random, fortuitous, or attenuated contacts he makes by interacting with other persons affiliated with the State. *Walden*, 134 S. Ct. at 1123 (citation and quotation marks omitted).

The Fifth Circuit applies a three step inquiry to determine if a court has specific personal jurisdiction: (1) whether the defendant has minimum contacts with the forum State, that is, whether it purposely directed its activities toward the forum State or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable. *Monkton*, 768 F.3d at 433.

The burden is on the plaintiff to establish the first two prongs, and if it does, the burden shifts to the defendant to show that exercising jurisdiction would be unfair or unreasonable. *Id.*

### *1.   Minimum Contacts*

The first step, the minimum contacts inquiry, is "fact intensive and no one element is decisive; rather, the touchstone is whether the defendant purposely directed his activities towards the forum State, such that he could reasonably foresee being haled into court there." *Southern*

6

*Filter*, 2013 WL 3423269, at *2 (citation omitted). The plaintiff cannot be the only link between the defendant and the forum; rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for jurisdiction over him. *Walden*, 134 S. Ct. at 1122.

The Fifth Circuit has "repeatedly held that the combination of mailing payments to the forum State, engaging in communications related to the execution and performance of the contract, and the existence of a contract between the nonresident defendant and a resident of the forum are insufficient to establish the minimum contacts necessary to support the exercise of specific personal jurisdiction over the nonresident defendant." *Freudensprung*, 379 F.3d at 344; *see also Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986) (holding that specific jurisdiction was impermissible by a Texas federal court where a defendant entered into a contract with a Texas plaintiff, sent final contract to plaintiff in Texas, sent checks to plaintiff's address in Texas, and engaged in written and telephone communications); *Stuart*, 772 F.2d at 1194 (finding no indication that the nonresident defendant intended to avail himself of the privilege of doing business in Texas and hence no specific jurisdiction where nonresident defendant contracted with Texas residents, directed letters and phone calls to Texas, and shipped prototypes and products to Texas at request of Texas residents).

Gulf Coast points to three actions by DCS to argue that DCS does have sufficient minimum contacts with Louisiana necessary for specific jurisdiction—(1) DCS voluntarily executed Acknowledgments with Gulf Coast, a Louisiana Bank, in order to induce Gulf Coast to extend credit in Louisiana to DCS' subcontractor Vinex; (2) DCS transmitted funds to Gulf Coast on three separate occasions in Louisiana; and (3) DCS communicated with Gulf Coast by sending the Acknowledgments to Louisiana. *Pl.'s Opp'n* 4-7, Doc. 9. Construing the facts in the light most

favorable to the Plaintiff, as this Court is required to do, and interpreting the Acknowledgment as a contract (which DCS denies), DCS does not have sufficient contacts with Louisiana to allow this court to exercise specific personal jurisdiction for two reasons.

First, DCS did not purposefully direct its activities towards Louisiana.[6] DCS' contacts with Louisiana are not based on *its own* actions directed toward Louisiana but merely on its reactions and responses to Gulf Coast, a company that was fortuitously located in Louisiana. The communications and wire transfers between Gulf Coast and DCS were initiated by Gulf Coast, not DCS; therefore they are insufficient to confer jurisdiction. *Walden*, 134 S. Ct. at 1122-23 ("[T]he relationship must arise out of contacts that the defendant *himself* creates with the forum… Due process requires that a defendant be haled into court in a forum State *on his own affiliation* with the State, not based on the random, fortuitous, or attenuated contacts he makes by interacting with other persons affiliated with the State.") (quotation marks and citation omitted); *Monkton*, 768 F.3d at 433 (holding that communications and wire transfers were insufficient to confer jurisdiction where the communications and transfers were initiated by the resident plaintiff).

Second, DCS' contacts with Louisiana are so minimal that this Court finds that DCS could not reasonably foresee being haled into court in Louisiana. As the Fifth Circuit has consistently held, merely contracting with, communicating with, and paying a forum resident are not the types of contacts that allow a court to exercise specific jurisdiction. *Freudensprung*, 379 F.3d at 344. A court addressing a similar factual pattern as the one presented here, held that "merely faxing an acknowledgment of the notice of assignment to [a forum State] or mailing payments to [a forum

---

[6] DCS did not initiate contact with Gulf Coast—it never asked Gulf Coast for a loan nor did it do business with Gulf Coast in Louisiana. *Affidavit of Kenneth Wood* ¶ 16, Doc. 4-2. Additionally, although Vinex had a relationship with Gulf Coast in Louisiana, DCS' only contact with Vinex was in Colorado. *Id.* ¶¶ 17, 18. In fact, DCS has never done business with Vinex in Louisiana. *Id.*

State] is insufficient to subject the nonresident to the forum's jurisdiction."[7] Here, DCS signed four Acknowledgments, sent a few e-mails, and made three wire payments to Louisiana. These minimal contacts do not allow this Court to exercise specific jurisdiction over DCS.

Gulf Coast cites to various cases for the proposition that a "nonresident purposefully establishe[s] minimum contacts with the forum State…by forwarding a guaranty to a [forum] plaintiff so that the [forum] plaintiff would advance credit to [the non-forum defendant]." *Pl.'s Opp'n* 5, Doc. 9. Gulf Coast argues that, based on these cases, DCS established minimum contacts with Louisiana. This Court has considered the cases cited by the Plaintiff and finds them factually distinguishable from the instant case for two reasons.

First, in all of the federal cases cited by the Plaintiff, the nonresident guarantor-defendant initiated contact with the forum lender to get the forum lender to loan money or advance credit. *See Southern Filter*, 2013 WL 3423269, at *1; *Central Progressive Bank v. Kuntz*, Civil Action No. 08-4147, 2008 WL 5264260, at *4 (E.D. La. Dec. 17, 2008) ("The defendants in this case personally solicited CPB, a Louisiana financial lending institution, to lend them money for their business. In connection with the loan, the defendants negotiated and executed a Business Loan Agreement, a Promissory Note, numerous Change in Terms Agreements, and the Commercial Guaranties in favor of CPB, a Louisiana entity."); *Consolidated Cos. Inc. v. Kern*, Civil Action No. 99-2704, 2000 WL 1036186, at *3 (E.D. La. Jul. 25, 2000) (finding that the nonresident defendant consciously chose to enter into a business relationship with a Louisiana company). In

---

[7] Applying federal law, a Texas Court of Appeals decision addressed a factually similar scenario to the present case. *Nationwide Capital v. The H. Epps Co.*, Civil Action No. 13-04-308, 2006 WL 1030105, at *4 (Tex. App. Corpus Christi Apr. 20, 2006). The defendant was a Missouri contractor that subcontracted with another company to perform work in Arkansas. *Id.* Subsequently, the subcontractor entered into an agreement with a Texas plaintiff in which it sold its invoices to plaintiff. *Id.* On various occasions, the contractor responded to the plaintiff via fax, sending a Notice of Assignment to plaintiff in Texas, acknowledging that it owed money to the subcontractor on the Arkansas project. *Id.* The contractor also sent more than twenty checks to the plaintiff in Texas. *Id.* Citing Fifth Circuit law, the Appeals Court held that "merely faxing an acknowledgment of the notice of assignment to [a forum State] or mailing payments to [a forum State] is insufficient to subject the nonresident to the forum's jurisdiction." *Id.* at *5.

contrast, the nonresident Defendant here, DCS, did not purposefully direct its activities towards Louisiana; Gulf Coast (the forum lender) solicited DCS, purposefully directing its activities to Tennessee.

Second, Plaintiff cites cases in which there is a very close connection between the company receiving the loan and the nonresident defendant-guarantor such that the courts could reasonably conclude that the guarantor-defendant was purposefully availing itself of the benefits of the forum State. *Southern Fitler*, 2013 WL 3423269, at *1-2 (guarantor was investor of company receiving loan); *Central Progressive*, 2008 WL 5264260, at *1 (guarantors were all members of the LLC receiving a loan); *Consolidated Cos. Inc.*, 2000 WL 1036186, at *1 (guarantor was primary shareholder of companies receiving credit from forum company). In those cases, it was reasonable for the courts to find that the defendant-guarantors purposely availed themselves of the benefits of the forum State because the guarantor-defendants were deriving direct benefits—by signing guaranties, their companies received loans in the forum State. In this case, the Court finds that DCS did not purposely avail itself of the privileges of conducting business in Louisiana. Although DCS may have signed Acknowledgments, DCS was not receiving a loan for itself or a subsidiary.

For the reasons stated above, the Court finds that Gulf Coast has failed to establish a *prima facie* showing that DCS has the requisite minimum contacts with Louisiana that would allow this Court to exercise specific jurisdiction.

### 2. *Reasonableness*

Under a specific jurisdiction inquiry, the burden is on the plaintiff to establish that the defendant has sufficient minimum contacts with the forum State and that the cause of action arises out of those contacts. *Monkton*, 768 F.3d at 433. If the plaintiff can establish these prongs, the burden shifts to the defendant to show that exercising jurisdiction would be unfair or unreasonable.

*Id.* This Court finds that Plaintiff has failed to meet its burden on the first two prongs and so it need not address whether the exercise of jurisdiction would be fair and reasonable.

**III.   CONCLUSION**

  For the reasons stated above, the Defendant's Motion to Dismiss (Doc. 4) is **GRANTED and the case is dismissed without prejudice**.

  Signed in Baton Rouge, Louisiana, on September 14, 2016.

         _____

         **JUDGE JAMES J. BRADY**
         **UNITED STATES DISTRICT COURT**
         **MIDDLE DISTRICT OF LOUISIANA**