UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

GULF COAST BANK AND TRUST
COMPANY

CIVIL ACTION

VERSUS

NO. 16-412-JJB-RLB

DESIGNED CONVEYOR SYSTEMS, LLC

**RULING**

This matter is before the Court on a Motion for a New Trial or to Alter Judgment Under Rule 59 (Doc. 23) brought by the Plaintiff, Gulf Coast Bank and Trust Company ("Gulf Coast"). The Defendant, Designed Conveyor Systems, LLC ("DCS") filed an Opposition (Doc. 25) and the Plaintiff filed a Reply (Doc. 27). Oral argument is unnecessary. For the reasons stated herein, the Plaintiff's Motion for a New Trial is **DENIED**.

**I.    BACKGROUND[1]**

This case concerns a dispute between Gulf Coast, a bank incorporated in Louisiana with its principal place of business in Louisiana and DCS, an LLC established in Indiana with its principal place of business in Tennessee. Gulf Coast claims that it is the rightful owner of receivables that DCS owes to its subcontractor, Vinex, for work that Vinex performed in connection with a project in Denver, Colorado.

DCS brought a motion to dismiss the case for lack of personal jurisdiction, among other arguments. This Court granted DCS' motion on the grounds that DCS' contacts with Louisiana were not sufficient to give this Court authority to assert general or specific jurisdiction over DCS. The Court dismissed the case without prejudice which would have allowed the Plaintiff to file in

---

[1] The Court need not recite all of the facts that led to this dispute. For a summary of the facts, see this Court's previous Ruling, Doc. 21.

1

an appropriate jurisdiction. Rather than refiling in another jurisdiction, the Plaintiff now seeks to have the Court alter its judgment.

The Plaintiff's main argument is that this Court failed to recognize that it had jurisdiction over the Defendant because the Defendant consented to the jurisdiction of Louisiana courts by complying with the Louisiana business registration statutes. The Plaintiff asserts that this is an independent basis for jurisdiction distinct from the general and specific jurisdiction tests which require an analysis of an entity's contacts with a given forum.

## II.   STANDARD

Altering or amending a judgment "is an extraordinary remedy that should be used sparingly."[2] A Rule 59(e) motion "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment."[3] "A court should refrain from altering or amending a ruling or judgment under Rule 59(e)…unless one of the following grounds is present: (1) the judgment is based upon manifest errors of law or fact; (2) the existence of newly discovered or previously unavailable evidence; (3) manifest injustice will result; or (4) an intervening change in controlling law has occurred."[4]

## III.   PARTIES' ARGUMENTS

The Plaintiff's central argument in bringing this Rule 59 motion is that the Court's previous Ruling dismissing the case on the grounds of lack of personal jurisdiction presents a manifest error of law. The Plaintiff argues that a foreign company is not guaranteed a right to perform work in any state it desires; instead a state has to grant the foreign company the privilege

---

[2] *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004).
[3] *Id.*
[4] *Blackard v. Livingston Parish Sewer District*, Civil Action No. 12-704, 2014 WL 199629, at *1 (M.D. La. Jan. 15, 2014).

2

of being able to perform work in its borders. The Plaintiff asserts that in exchange for granting this privilege, states may impose a variety of requirements on the company, and one such requirement that many states enforce is that the company must consent to the jurisdiction of the state's courts by appointing an agent for service of process. The Plaintiff argues that Louisiana has such a consent requirement, and that the United States Supreme Court holds these consent requirements constitutional under the due process clause.

Applying the law to the facts here, the Plaintiff argues that the Defendant voluntarily designated a Louisiana agent for service of process and therefore Defendant has consented to general jurisdiction in any court in Louisiana.[5] The Plaintiff argues this Court did not address the various consent jurisdiction cases and therefore the Court's Ruling was manifestly erroneous.[6] The Plaintiff is effectively arguing that there are three bases for the Court to exercise jurisdiction over the Defendant and this Court only considered two of them in its previous Ruling. The Plaintiff asserts that a Louisiana court can exercise jurisdiction over a defendant if it has specific jurisdiction, general jurisdiction, or if the defendant has consented to the exercise of general jurisdiction by registering to do business in Louisiana.

---

[5] The Plaintiff does not use the term "general jurisdiction" very often in its brief, instead preferring to argue that a principal consequence of designating an agent for service of process is to subject the foreign corporation to "jurisdiction." However, Plaintiff's omission of the word "general" obscures the fact that the Plaintiff is asking this Court to find all-purpose jurisdiction over the Defendant because it has registered to do business in Louisiana. The Court prefers to use the word "general" to more clearly identify the jurisdictional consequences of Plaintiff's position.
[6] The Court notes that it did not explicitly address *Cowan v. Ford Motor Co.*, 694 F.2d 104 (5th Cir. 1982) nor did it address *Phillips Petroleum Co. v. OKC Ltd.*, 634 So.2d 1186 (La. 1994) in its prior Ruling. The Court also notes that while the Plaintiff did rely on *Cowan* and *Phillips* in its previous brief (Doc. 9), it appeared to frame those opinions as "general jurisdiction" opinions rather than "consent jurisdiction" opinions. Notably, the word "consent" only shows up in the Plaintiff's prior brief twice. Now, however, the issue is more clearly presented to the Court. The Plaintiff is not arguing that the Court should assert general jurisdiction over the Defendant by virtue of his numerous contacts with Louisiana, but rather, it is arguing that registering an agent means that a company is consenting to jurisdiction in any and all Louisiana courts. In other words, the Plaintiff is arguing that consent is an independent basis for establishing personal jurisdiction, separate from the contacts analysis performed in determining whether specific and general jurisdiction are appropriate.

While both a finding of general jurisdiction and specific jurisdiction require a contacts analysis[7], Plaintiff appears to assert that a finding of jurisdiction by consent does not require a contacts analysis. In other words, the Plaintiff is effectively arguing that a foreign corporation consents to Louisiana's jurisdiction by registering to do business here, and that such an interpretation satisfies due process and an examination of an entity's contacts with Louisiana is unnecessary.

The Defendant makes two arguments as to why the Motion should be denied. First, the Defendant argues that the Plaintiff is merely rearguing claims that this Court has already rejected. Second, the Defendant argues that the Motion should be denied because its previous Ruling was not manifestly erroneous given that *Daimler* changed the landscape of personal jurisdiction.[8]

## IV. LAW & ANALYSIS

Every state in the country has a registration statute that requires foreign corporations doing business in the state to register and to appoint an agent for service of process.[9] Although all states require foreign corporations to register and appoint an agent, the jurisdictional consequences of complying with the registrations statutes vary. Some state registration statutes, like Arkansas',

---

[7] A court may assert general jurisdiction over a foreign (i.e. sister-state or foreign-country) company to hear any and all claims against it when its contacts with the state are so continuous and systematic as to render it essentially at home in the forum state. *Daimler AG v. Bauman*, 134 S.Ct. 746, 751 (2014). A court may assert specific jurisdiction if (1) the defendant has minimum contacts with the forum state, that is, if it purposely directed its activities toward the forum state or purposefully availed itself of the privilege of conducting activities there; and (2) if plaintiff's cause of action arises out of or results from the defendant's forum related contacts. *Monkton Ins. Services, Ltd. v. Ritter,* 768 F.3d 429, 433 (5th Cir. 2014).
[8] *Daimler AG v. Bauman*, 134 S.Ct. 746, 751 (2014).
[9] *Genuine Parts Co. v. Cepec*, 137 A.3d 123, 125 (Del. 2016) (citing Tanya J. Monestier, *Registration Statutes, General Jurisdiction, and the Fallacy of Consent*, 36 CARDOZO L. REV. 1343, 1363 (2015) ("Every state has a registration statute that requires corporations doing business in the state to register with the state and appoint an agent for service of process.") and Matthew Kipp, *Inferring Express Consent: The Paradox of Permitting Registration Statutes to Confer General Jurisdiction*, 9 REV. LITIG. 1, 1 (1990) ("As a condition for doing business within their borders, all states require a foreign corporation to designate a local resident for service of process. This requirement is embodied in what commonly are known as registration statutes.")).

explicitly state that appointment of a registered agent has no effect on jurisdiction.[10] Other states, however, read their registrations statutes more broadly. For example, the Kansas Supreme Court held that complying with the Kansas statute and registering to do business in Kansas results in consent to general jurisdiction.[11]

A state's interpretation of its registration statute is important because determining whether registering to do business establishes consent to general jurisdiction requires a court to perform a two-step analysis. First, a court must determine whether the applicable registration statute, here the Louisiana statute, equates compliance with consent to general jurisdiction (like the Kansas statute), or whether it is only a means to provide notice to defendants that they have been sued in a certain state (like the Arkansas statute). This first step is a matter of statutory interpretation. Second, if compliance with the Louisiana statute constitutes consent to general jurisdiction, this Court must consider whether such an interpretation of consent comports with the due process clause of the United States Constitution.[12]

Although well-argued, Plaintiff's position that registering an agent in Louisiana is akin to consenting to general jurisdiction is untenable for three reasons. First, despite Plaintiff's assertions, it is not clear from the statute and Louisiana case law that the effect of complying with the Louisiana registration statute is that a non-resident company is consenting to the general jurisdiction of Louisiana courts. Plaintiff argues that *Phillips*[13], a Louisiana Supreme Court case, clearly held that registering an agent means that a non-resident company is consenting to general

---

[10] Ark. Code Ann. § 4-20-115 ("The appointment or maintenance in this state of a registered agent does not by itself create the basis for personal jurisdiction over the represented entity in this state.").
[11] *Merriman v. Crompton Corp.*, 146 P.3d 162, 177 (Kan. 2006).
[12] *See AstraZeneca AB v. Mylan Pharmaceuticals Inc.*, 72 F.Supp.3d 549, 556-58 (D. Del. 2014) (employing a two-step approach to determine if compliance with the Delaware registration statute equates with consent to general jurisdiction by first looking to Delaware law to interpret the statute and then to federal case law to determine if such an interpretation comports with due process).
[13] *Phillips Petroleum Co. v. OKC Ltd.*, 634 So.2d 1186 (La. 1994).

5

jurisdiction. This Court disagrees. Plaintiff relies on *dicta* from *Phillips*, and a Louisiana appellate court has noted that the registration statute should not be read so broadly.

Second, even assuming that the Louisiana registration statute means that a company consents to general jurisdiction, this would be an unconstitutional interpretation of the statute based on the Fifth Circuit case *Siemer v. Learjet*.[14]

Third, even if *Siemer* was not a due process case and was a limited statutory holding, this Court finds that, in light of *Daimler*, interpreting a registration statute as giving consent to general jurisdiction is untenable.

### A. The Court Did Not Commit a Manifest Error of Law In Not Relying On *Phillips* Because *Phillips'* Assertion That Compliance Constitutes Consent to Jurisdiction Was *Dicta*.

The Plaintiff argues that Louisiana law is clear that designating an agent for service of process in Louisiana subjects the foreign company to general jurisdiction in Louisiana. This Court disagrees. *Phillips* is not so clear and therefore this Court's previous judgment was not based on a manifest error of law.

Louisiana, like every other state in the country, requires a foreign entity to register to do business in the state before it can transact business in the state.[15] The law requires the entity to receive a certificate of authority from the secretary of state prior to doing business here.[16] Additionally, as a consequence of receiving authorization to transact business in the state, the foreign entity must maintain a registered agent of service and designate an office.[17] Nothing in the statutes explicitly says that by registering an agent a foreign entity is consenting to the general jurisdiction of Louisiana courts.

---

[14] *Siemer v. Learjet Acquisition Corp.*, 966 F.2d 179 (5th Cir. 1992).
[15] La. Rev. Stat. Ann. § 12:301.
[16] *Id.*
[17] La. Rev. Stat. Ann. § 12:308.

The Plaintiff argues that based on the Louisiana Supreme Court case *Phillips* and its progeny, when a foreign entity designates an agent for service of process it is consenting to the general jurisdiction of any court in Louisiana. This Court does not read *Phillips* so broadly.

In *Phillips*, the issue before the Louisiana Supreme Court was whether an out-of-state nonparty corporation could be subpoenaed to appear and produce documents at a deposition.[18] The court was not tasked with determining the jurisdictional consequences of the Louisiana registration statutes. In *dicta*, the Louisiana Supreme Court asserted that a consequence of designating an agent for service of process in Louisiana is to subject that foreign corporation to the jurisdiction of any Louisiana court.[19]

As one appellate court has noted, the Louisiana Supreme Court did not decide "whether such a designation would automatically function as consent to personal jurisdiction in the state for suits arising out-of-state, when the defendant corporation did not have contacts within the state sufficient to satisfy due process." In *Taylor v. Arellano*, this Louisiana appellate court held that *Phillips* should not be read in the broad way espoused by Plaintiff.[20]

Although some Louisiana courts have adopted the broad reading of *Phillips* espoused by Plaintiff[21], the current question before the Court is whether its previous Ruling was based on a manifest error of law. Given that a Louisiana appellate court has interpreted *Phillips* narrowly, this Court committed no error by not relying on *Phillips* and implicitly finding that, as a matter of statutory interpretation, compliance with the Louisiana registration statute does not constitute consent to general jurisdiction.

---

[18] *Phillips*, 634 So.2d at 1187.
[19] *Id.*
[20] *Taylor v. Arellano*, 2004-2281 (La. App. 1st Cir. 12/22/05), 928 So.2d 55, 58-60.
[21] *See Pl.'s Supp. Mem.* 7, Doc. 23-1.

      **B.**      **Even If *Phillips* Holds That Compliance Equals Consent to Jurisdiction, This Court Did Not Commit a Manifest Error of Law Because *Siemer* is a Due Process Decision That Held That The Presence of a Registered Agent Alone Is Insufficient To Support The Exercise of General Jurisdiction.**

However, this Court will give the Plaintiff the benefit of the doubt and assume, for argument's sake, that the Louisiana statute equates compliance with consent. Assuming that the Defendant implicitly consented to the jurisdiction of Louisiana courts by appointing an agent for service, this Court must now determine if such an interpretation comports with the due process clause of the United States Constitution.

Despite Plaintiff's arguments to the contrary, Fifth Circuit case law is clear that a state violates a defendant's due process rights when it exercises general jurisdiction based solely on the presence of a registered agent.[22] *Siemer* held that the plaintiff's assertion that the "mere service on a corporate agent automatically confers general jurisdiction displays a fundamental misconception of corporate jurisdictional principles. This concept is directly contrary to the historical rationale of *International Shoe* and subsequent Supreme Court decisions."[23]

The Plaintiff tries to limit *Siemer* by saying it is both factually and legally distinguishable from the instant case. Plaintiff asserts that *Siemer* is factually distinguishable because in *Siemer* neither the parties nor the cause of action had a connection to the forum state, Texas. In the present case, the Plaintiff argues that the forum state, Louisiana, has an interest in this case because the Plaintiff is a Louisiana bank suing on a contract that was executed and performed in Louisiana. This characterization of the facts overstates Louisiana's connection to the dispute. Although the Plaintiff is a Louisiana bank[24], this Court noted in its previous Ruling that it is far from clear that

---

[22] *Siemer*, 966 F.2d at 183.
[23] *Id.*
[24] Additionally, the fact that Plaintiff is a Louisiana resident does not hold much weight in whether this Court should find it has jurisdiction over the Defendant because "[d]ue process limits on the state's adjudicative authority

the relationship between the Plaintiff and the Defendant constituted a contract that was executed and performed in Louisiana. The Defendant merely wired some money to the Plaintiff in Louisiana and responded to Plaintiff's e-mails requesting that the Defendant acknowledge that it owed money to a subcontractor that in turn owed money to the Plaintiff for work performed in Colorado. The facts in *Siemer* are not inapposite to the present dispute.

As a legal matter, the Plaintiff argues that *Siemer* was not a constitutional decision but merely a statutory decision. The Plaintiff asserts that *Siemer* held that complying with the *Texas* statute did not act as consent to jurisdiction, but the Plaintiff maintains that *Siemer* left open the possibility that another state's registration statute could be read as acting as consent to jurisdiction without running afoul of the due process clause. This Court disagrees.

*Siemer* was clearly a due process decision that held that compliance with a registration statute does not act as consent to jurisdiction because such an interpretation does not comport with the due process clause. Many federal courts in Louisiana treat *Siemer* as a due process case and have held that they lack the authority to exercise jurisdiction over foreign entities whose only contact with Louisiana is that it has complied with the Louisiana registration statute.[25] In other words, notwithstanding the Louisiana Supreme Court case, *Phillips*, which may seem to say that

---

principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties." *Walden v. Fiore*, 134 S.Ct. 1115, 1122 (2014).

[25] *Firefighters' Retirement System v. Royal Bank of Scotland, PLC*, Civil Action No. 15-482, 2016 WL 1254366, at *5 (M.D. La. Mar. 29, 2016) ("Fifth Circuit precedent has consistently held that being qualified to do business in a state and the appointment of a registered agent for service alone cannot support the exercise of general jurisdiction. Such precedent is further strengthened post-*Daimler*."); *La. Limestone & Logistics, LLC v. Granite Group*, Civil Action No. 13-0798, 2014 WL 1217956, at *5 (W.D. La. Feb. 28, 2014) ("[Plaintiff] contends that this Court may exercise general jurisdiction over [defendant] because [defendant] registered with the Louisiana Secretary of State, listing both a Louisiana business office and a registered agent. However, [plaintiff's] position is not consistent with Fifth Circuit precedent holding that the presence of the registered agent and registered business office alone is insufficient to support the exercise of general jurisdiction."); *Crochet v. Wal-Mart*, Civil Action No. 11-1404, 2012 WL 489204, at *4-5 (W.D. La. Feb. 13, 2012); *DNH, L.L.C. v. In-N-Out Burger*, 381 F.Supp.2d 559, 565 (E.D. La. 2005); *see also* Kevin Benish, *Pennoyer's Ghost: Consent, Registration Statutes, And General Jurisdiction After Daimler AG v. Bauman*, 90 N.Y.U. L. REV. 1609, 1611-12 (2015) (citing *Siemer* and noting that "the First, Fourth, Fifth, Seventh, and Eleventh Circuits hold consent-based general jurisdiction violates due process.").

due process is not violated when a foreign entity is held to consent to general jurisdiction by appointing an agent, the Fifth Circuit decision *Siemer*, which this Court is bound by, comes to the opposite conclusion.

In support of its argument that *Siemer* should be read as a statutory, and not a due process holding, the Plaintiff relies on the Fifth Circuit case *Cowan v. Ford Motor Co.*, a 1982 Fifth Circuit decision.[26] Although *Cowan* seems to support Plaintiff's position (in that it seems to hold that consent to general jurisdiction by registration comports with due process) and be inconsistent with *Siemer*, this Court finds that *Cowan* is inapposite for two reasons.

First, its holding, that a corporation authorized to do business in Mississippi is to be treated as equivalent to a resident corporation of Mississippi and that such a holding comports with due process, is directly inconsistent with *Daimler*. As stated above, every state requires a foreign corporation to register before being able to do business in that state. Therefore, treating business registration as consent to general jurisdiction would have the effect of subjecting a foreign corporation to general jurisdiction in every jurisdiction in which it did business which runs contrary to *Daimler's* pronouncement that "[a] corporation that operates in many places can scarcely be deemed at home in all of them. Otherwise, 'at home' would be synonymous with 'doing business' tests framed before specific jurisdiction evolved in the United States."[27]

Second, *Cowan* is unhelpful to the issue before the Court which is whether statutory consent to general jurisdiction is constitutional when a defendant's overall contacts are insufficient for a court to exercise general or specific jurisdiction. In its previous Ruling, the Court found that the Defendant did not have sufficient contacts which would allow the Court to exercise general or

---

[26] *Cowan v. Ford Motor Co.*, 694 F.2d 104 (5th Cir. 1982).
[27] *Daimler*, 134 S.Ct. at 762 n. 20.

10

specific jurisdiction over it. Therefore, the Plaintiff must be citing to *Cowan* for the proposition that by registering to do business, a foreign entity consents to the general jurisdiction of a state notwithstanding the fact that it does not have sufficient minimum contacts to satisfy general or specific jurisdiction. However, *Cowan* did not hold that a court can exercise general jurisdiction over a corporation based *solely* on the corporation's appointment of an agent when its contacts are otherwise insufficient for the exercise of jurisdiction. *Cowan* is not clear as to which criteria it relied on to find jurisdiction, but this Court finds that it seems to be a mix of *both* consent and sufficient minimum contacts: "[The defendant] has agreed to be treated as a resident corporation. By appointing a resident agent and *conducting substantial business* in Mississippi, it has consented to Mississippi's exercise of personal jurisdiction…Several times in recent years the Supreme Court has found state attempts to exercise jurisdiction over non-resident defendants to violate due process. In each of those cases the state's attempt to bring the defendant before its courts offended traditional notions of fair play and substantial justice because the defendant lacked sufficient minimum contacts with the forum state. Here, however, *sufficient contacts indisputably are present*."[28] *Cowan* seems to meld the two theories of jurisdiction—consent and minimum contacts, and therefore it is unhelpful in resolving the current issue before the Court which is whether consent by registration without sufficient minimum contacts allows this Court to exercise jurisdiction.

Additionally, at least one other court has addressed the issue of how to reconcile *Siemer* and *Cowan*. For a variety of reasons including some of the reasons listed above, that court found *Siemer* controlling and *Cowan* inapplicable.[29] Again, the Court notes that its task at this time is to

---

[28] *Cowan*, 694 F.2d at 107 & n. 8 (citations omitted and emphasis added).
[29] *See Follette v. Clariol Inc.*, 829 F. Supp. 840, 847 (W.D. La. 1993).

determine whether its prior Ruling was based on a manifest error of law. Previously, this Court treated *Siemer* as a due process case and the Court finds that this was appropriate given all of the reasons stated above.

        **C.**     **Even If *Siemer* is Read Narrowly as a Statutory Decision and Not a Constitutional Decision, This Court Did Not Commit A Manifest Error of Law Because *Daimler* Changed the Jurisdictional Landscape.**

Again, the Court will give the Plaintiff the benefit of the doubt. For argument's sake the Court assumes that *Siemer* is a statutory holding about the jurisdictional reach of Texas' registration statutes rather than an interpretation of the due process clause. In other words, this Court assumes that Fifth Circuit law does not preclude a finding that consent by registration comports with due process. However, even if consent to jurisdiction by registration was constitutional before *Daimler*, it is certainly unconstitutional in light of Daimler's due process holding.

Ruling for the Plaintiff in this matter would rob *Daimler* of its central meaning. *Daimler* explicitly rejected the theory that a foreign company is subject to the jurisdiction of every state in which it does any business. Every state requires a foreign corporation to register before being able to do business in that state. Therefore, treating business registration as consent to general jurisdiction would have the effect of subjecting a foreign corporation to general jurisdiction in every jurisdiction in which it did business. Such a conclusion is untenable in light of *Daimler*. As noted recently by the Second Circuit: "[i]f mere registration and the accompanying appointment of an in-state agent—without an express consent to general jurisdiction—nonetheless sufficed to confer general jurisdiction by implicit consent, every corporation would be subject to general

12

jurisdiction in every state in which it registered, and *Daimler's* ruling would be robbed of meaning by a back-door thief."[30] This Court will not be an accomplice to such a back-door thief.

As support for its contention that post-*Daimler*, consent to general jurisdiction via compliance with registration statutes is a constitutional basis for exercising jurisdiction, the Plaintiff points to US Supreme Court cases from 1917 and 1939.[31] The Plaintiff argues that "[t]his Supreme Court jurisprudence establishes that states have the authority to determine the scope and meaning of their respective registration statutes and that states do not act unconstitutionally in conditioning authorization on consent to their courts' jurisdiction."[32] Plaintiff further argues that "[n]othing in *Daimler* purports to overrule *Neirbo* or *Pennsylvania Fire* or reject the bedrock principle that these decisions stand for—that it is up to each state to interpret the scope and meaning of its own registration statutes."[33]

While the Plaintiff is correct about the holdings of those cases from seventy years ago, the Plaintiff fails to realize that the theoretical underpinnings of those decisions have been continuously eroded in the past half century. Those decisions have little value in today's personal jurisdictional analysis.

Both of those decisions came at a time when jurisdiction could be found over a corporation only when it could be said that the corporation was fictionally "present" in the forum.[34] However,

---

[30] *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 640 (2d Cir. 2016).
[31] *Pennsylvania Fire Ins. Co. v. Gold Issue Mining*, 243 U.S. 93 (1917); *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165 (1939).
[32] *Pl.'s Supp. Mem.* 5-6, Doc. 23-1.
[33] *Pl.'s Reply Br* 5, Doc. 27-1.
[34] *Burnham v. Superior Court of Ca.*, 495 U.S. 604, 617 (1990) ("States required, for example, that nonresident corporations appoint an in-state agent upon whom process could be served as a condition of transacting business within their borders…We initially upheld these laws under the Due Process Clause on grounds that they complied with *Pennoyer's* rigid requirement of either 'consent' or 'presence.' As many observed, however, the consent and presence were purely fictional. Our opinion in *International Shoe* cast those fictions aside and made explicit the underlying basis of these decisions: Due process does not necessarily *require* the States to adhere to the unbending territorial limits on jurisdiction set forth in *Pennoyer*. The validity of assertion of jurisdiction over a nonconsenting defendant who is not present in the forum depends upon whether the quality and nature of his activity in relation to

*International Shoe* "cast those fictions aside" and moved the jurisdictional analysis towards a corporation's minimum contacts with a state and the reasonableness of haling a foreign corporation into a forum state's court.[35]

Additionally, despite Plaintiff's insistence on the fact that *Pennsylvania Fire* and *Neirbo* remain good law, the Supreme Court has cautioned courts that it is inappropriate to rely on cases that were based in looking for the fictional presence of a corporation in order to exercise jurisdiction. In *Shaffer*, the Supreme Court held that "all assertions of state-court jurisdiction must be evaluated according to the standards set forth in *International Shoe* and its progeny."[36] The Court went on to say that it would not be "fruitful" for it to re-examine the cases decided on the rationale of *Pennoyer* to determine whether they would have been sustained under the *International Shoe* standard but "to the extent that prior decisions are inconsistent with this standard, they are overruled."[37] In its most recent personal jurisdiction decision, *Daimler*, the Supreme Court again cautioned lower courts not to rely on *Pennoyer* era cases: "*Barrow* and *Tauza* indeed upheld the exercise of general jurisdiction based on the presence of a local office, which signaled that the corporation was 'doing business' in the forum. *Perkins'* unadorned citations to these cases, both decided in the era dominated by *Pennoyer*'s territorial thinking should not attract heavy reliance today."[38]

Furthermore, in recent years, the many courts that have considered the issue of whether consent by registration remains a constitutional basis for jurisdiction post-*Daimler* have taken the

---

the forum renders such jurisdiction consistent with traditional notions of fair play and substantial justice.") (internal quotation marks and citations omitted).
[35] *Id.*
[36] *Shaffer v. Heitner*, 433 U.S. 186, 212 (1977).
[37] *Id.* at n. 39.
[38] *Daimler*, 134 S. Ct. 746, 761 n. 18.

position that such statutory consent is unconstitutional.[39] This Court agrees with those courts and finds that it did not commit a manifest error of law in finding that it did not have the authority to exercise jurisdiction over the Defendant based on a consent theory.

## V. CONCLUSION

The Court has given the Plaintiff the benefit of the doubt in reaching a conclusion. This Court did not commit a manifest error of law because it is not clear that compliance with the Louisiana registration statute constitutes consent to general jurisdiction. Even if this Court were to reach the due process issue by finding that, as a statutory matter, compliance with Louisiana's registration statute constitutes consent to general jurisdiction, such an interpretation would be unconstitutional in light of *Siemer*, a controlling Fifth Circuit decision. Even if the Court were to view *Siemer* narrowly and find that the Fifth Circuit does not preclude a state from exercising general jurisdiction based on compliance with a registration statute, such an interpretation is now unconstitutional in light of *Daimler*.

In its first Ruling, the Court found that it was neither able to exercise specific or general jurisdiction. The Court finds no reason to disturb that holding. The Defendant's act of registering

---

[39] *Genuine Parts Co. v. Cepec*, 137 A.3d 123, 132 (Del. 2016) (finding consent by registration unconstitutional and noting that "two recent U.S. Supreme Court decisions, *Goodyear* and *Daimler*, made a major shift in our nation's personal jurisdiction jurisprudence—a shift that undermines the key foundation upon which prior federal cases like *Neirbo* and *Pennsylvania Fire* relied."); *Keeley v. Pfizer Inc.*, Civil Action No. 15-583, 2015 WL 3999488, at *4 (E.D. Mo. July 1, 2015) ("Plaintiffs contend Defendant has consented to jurisdiction in Missouri because Defendant is registered to do business in Missouri and has a registered agent in Missouri…Many states have enacted similar statutes and national corporations are often registered in to do business in several states. If following these statutes creates jurisdiction, national companies would be subject to suit all over the country. This result is contrary to the holding in *Daimler* that merely doing business in a state is not enough to establish general jurisdiction…A defendant's consent to jurisdiction must satisfy the standards of due process and finding a defendant consents to jurisdiction by registering to do business in a state or maintaining a registered agent does not."); *Chatwal Hotels & Resorts LLC v. Dollywood Co.*, 90 F.Supp.3d 97, 105 (S.D.N.Y. 2015) ("After *Daimler*…the mere fact of [defendant's] being registered to do business is insufficient to confer general jurisdiction in a state that is neither its state of incorporation or its principal place of business."); *Firefighters' Retirement System v. Royal Bank of Scotland, PLC*, Civil Action No. 15-482, 2016 WL 1254366, at *5 (M.D. La. Mar. 29, 2016) ("Fifth Circuit precedent has consistently held that being qualified to do business in a state and the appointment of a registered agent for service alone cannot support the exercise of general jurisdiction. Such precedent is further strengthened post-*Daimler*.").

an agent does not give this Court the ability to exercise jurisdiction over the Defendant. For the reasons stated above, Plaintiff's Motion (Doc. 23) is **DENIED.**

Signed in Baton Rouge, Louisiana, on January 11, 2017.

**JUDGE JAMES J. BRADY**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**